IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 18-cv-01477-PAB-KMT

JOSEPH PIRERA,

    Plaintiff,

v.

THE SULLIVAN KLINE GROUP, LLC,

    Defendant.
_____

# ORDER
_____

This matter comes before the Court on Plaintiff's Motion for Default Judgment [Docket No. 14]. The Court has jurisdiction pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1337.

## I. BACKGROUND

Because of the Clerk of Court's entry of default, Docket No. 10, the allegations in plaintiff's complaint, Docket No. 1, are deemed admitted. *Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003). Sometime before April 2009, plaintiff incurred a financial obligation for an overdrawn bank account that was primarily for plaintiff's personal use or for household expenditures. Docket No. 2 at 2-3, ¶¶ 6, 22. Plaintiff last made a payment toward the obligation in April 2009. *Id*. at 3, ¶ 22. On or about May 1, 2018, defendant called plaintiff in an attempt to collect plaintiff's debt. *Id*., ¶ 15. On or about May 3, 2018, defendant sent a letter to plaintiff in an attempt to collect plaintiff's debt. *Id*., ¶ 17; Docket No. 2-1. According to the letter, defendant sought to collect a debt of $594.71 on an account originally owned by "Wachovia/Wells Fargo." Docket

No. 2 at 3, ¶ 19. In the letter, defendant indicated that "a recommendation to file a lawsuit to collect this debt is being processed." Docket No. 2 at 3, ¶ 21. The letter also stated that the debt could be reported to a company called ChexSystems, which could lead to a suspension of plaintiff's bank accounts and debit card privileges for up to five years. *Id*. According to plaintiff, defendant knew that it could not legally enforce the debt through litigation at the time the letter was sent because the applicable statute of limitations expired in April 2012. *Id*. at 4, ¶¶ 24-30. According to plaintiff, defendant also knew that it could not report the debt to ChexSystems because more than seven years had elapsed since plaintiff last made payment on the debt. *Id*. at 5-6, ¶¶ 36-42.

Plaintiff brings a claim for relief for violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Docket No. 2. Although served with the complaint and summons, defendant did not answer or otherwise respond to plaintiff's complaint. Accordingly, the Clerk of Court entered default on August 1, 2018. Docket No. 10.

## II. ANALYSIS

### A. Default Judgment

In order to obtain a judgment by default, a party must follow the two-step process described in Fed. R. Civ. P. 55. First, the party must seek an entry of default from the Clerk of the Court under Rule 55(a). Second, after default has been entered by the Clerk, the party must seek judgment under the strictures of Rule 55(b). *See Williams v. Smithson*, 1995 WL 365988, at *1 (10th Cir. June 20, 1995) (citing *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981)).

The decision to enter default judgment is "'committed to the district court's sound discretion." *Olcott*, 327 F.3d at 1124 (citation omitted). In exercising that discretion, the Court considers that "[s]trong policies favor resolution of disputes on their merits." *Ruplinger v. Rains*, 946 F.2d 731, 732 (10th Cir. 1991) (quotation and citations omitted). "The default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party." *Id.* It serves to protect plaintiffs against "interminable delay and continued uncertainty as to his rights." *Id.* at 733. When "ruling on a motion for default judgment, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment." *Seme v. E&H Prof'l Sec. Co., Inc.*, No. 08-cv-01569-RPM-KMT, 2010 WL 1553786, at *11 (D. Colo. Mar. 19, 2010).

A party may not simply sit out the litigation without consequence. *See Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444-45 (10th Cir. 1983) ("[A] workable system of justice requires that litigants not be free to appear at their pleasure. We therefore must hold parties and their attorneys to a reasonably high standard of diligence in observing the courts' rules of procedure. The threat of judgment by default serves as an incentive to meet this standard"). One such consequence is that, upon the entry of default against a defendant, the well-pleaded allegations in the complaint are deemed admitted. *See* Charles Wright, Arthur Miller & Mary Kane, Fed. Prac. & Proc. § 2688 (3d ed. 2010). "Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Id.* at 63. A court need not accept conclusory allegations. *Moffett v. Halliburton Energy*

*Servs., Inc.* 291 F.3d 1227, 1232 (10th Cir. 2002). Although "[s]pecific facts are not necessary" in order to state a claim, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), the well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation and alteration marks omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (quotation and citation omitted).

> While the FDCPA forbids a variety of conduct,
>
> The substantive heart of the FDCPA lies in three broad prohibitions. First, a 'debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.' § 1692d. Second, a 'debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.' § 1692e. Third, a 'debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.' § 1692f.

*Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002). To establish a violation of the FDCPA, plaintiff must show that (1) he is a "consumer" within the meaning of 15 U.S.C. § 1692a(3),[1] (2) his debt arises out of a transaction entered into primarily for personal, family, or household purposes, 15 U.S.C. § 1692a(5), (3) defendant is a "debt collector"

---

[1] "The term 'consumer' means any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3).

within the meaning of 15 U.S.C. § 1692a(6),[2] and (4) defendant, through its acts or omissions, violated a provision of the FDCPA.  *See Nikkel v. Wakefield & Assoc., Inc.*, No. 10-cv-02411-PAB-CBS, 2012 WL 5571058 at *10 (D. Colo. Nov. 15, 2012).  In analyzing FDCPA claims, debt collectors' communications are generally viewed from the perspective of how the least sophisticated consumer would interpret the notice received from the debt collector.  *Irvine v. I.C. Sys., Inc.*, 176 F. Supp. 3d 1054, 1060 (D. Colo. 2016), *reconsideration denied*, 198 F. Supp. 3d 1232 (D. Colo. 2016) (citing *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993)).

The Court finds that the complaint, deemed admitted for the purposes of this motion, sufficiently alleges a violation of the FDCPA.  Plaintiff alleges that he is a consumer who incurred a debt for personal, family, or household purposes.  *See* Docket No. 2 at 2, ¶¶ 6-7.  Plaintiff further alleges that defendant is a "debt collector" as defined by the FDCPA.  *Id.*, ¶¶ 9-13.  Moreover, plaintiff's allegations support a finding that defendant threatened to take action that cannot legally be taken in violation of 15 U.S.C. § 1692e(5).  Plaintiff alleges that defendant could not take legal action to enforce the debt because it is barred by the statute of limitations.  Plaintiff last made a payment on the debt, which was for an overdrawn bank account, in April 2009.  *See* Docket No. 2 at 2-3, ¶¶ 6, 22.  The statute of limitations on actions to recover a debt in Colorado is six years and begins to run on the date that the debt first becomes due.  *See* Colo. Rev. Stat. § 13-80-103.5; *Hassler v. Account Brokers of Larimer Cty., Inc.*, 274 P.3d 547, 549

---

[2] "The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).

(Colo. 2012).[3] Although plaintiff does not specifically allege that the debt became due at a certain point, it is a reasonable inference that an overdrawn bank account would come due within three years of the last payment. Accordingly, based on plaintiff's allegation that he last made a payment on an overdrawn bank account in April 2009, plaintiff has plausibly alleged that the debt became due more than six years before defendant's May 3, 2018 letter.

Although the running of the statute of limitations does not extinguish a debt, it may cause the remedy on a debt to be lost. *See Ramsey's Estate v. State Dep't of Revenue*, 591 P.2d 591, 595 (Colo. App. 1979). Accordingly, courts permit debt collectors to send collection letters for time-barred debt where the letters do not threaten collection action; however, if there is a threat of litigation or other remedy that the debt collector could not legally pursue, the FDCPA is violated. *See, e.g., Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 32-33 (3d Cir. 2011); *Gervais v. Riddle & Assocs., P.C.*, 479 F. Supp. 2d 270, 273-274 (D. Conn. 2007) (collecting cases). Here, defendant's letter contained a threat of litigation, informing plaintiff that "a recommendation to file a lawsuit to collect this debt is being processed." *See* Docket No. 2 at 3, ¶ 21. Thus, defendant's letter violated 15 U.S.C. § 1692e(5). Because plaintiff has properly stated a claim for violation of the FDCPA, the Court will grant plaintiff's motion for default judgment.[4]

---

[3] Plaintiff alleges that the applicable statute of limitations is three years, which applies to breach of contract actions. *See* Docket No. 2 at 4, ¶ 23 (citing Colo. Rev. Stat. § 13-80-101). The Court notes that the purported claim against plaintiff would be barred under either a three-year or six-year statute of limitations.

[4] Plaintiff offers several alternative theories of how defendant's May 3, 2018 letter violated the FDCPA. *See* Docket No. 2 at 8, ¶ 55 (alleging that defendant violated 15 U.S.C. §§ 1692e, e(2)(A), e(5), e(10), g(a), and the FDCPA as a whole). Having already established a violation of § 1692e(5), findings on alternative theories of liability

### B. Statutory Damages

The FDCPA provides for statutory damages in an amount "as the court may allow, but not exceeding $1,000." 15 U.S.C. § 1692k(a)(2)(A). In determining the amount of statutory damages to award, courts are to consider the debt collector's conduct, specifically "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b)(1).

Courts have denied an award of statutory damages in cases where the violation is isolated, non-threatening, and unintentional. *See, e.g., Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 28 (2d Cir. 1989); *Emanuel v. Am. Credit Exchange*, 870 F.2d 805, 809 (2d Cir. 1989). In other cases, courts have awarded up to the full $1,000 where debt collectors violated the FDCPA by sending one or more letters that did not contain required disclosures or were otherwise false or misleading. *See, e.g., Francis v. Snyder*, 2006 WL 1236052, at *1 (N.D. Ill. May 4, 2006) (awarding $1,000 in statutory damages where debt collector sent letter threatening baseless lawsuit); *Rivera v. Nat'l Check Processing, LLC*, 2011 WL 996340, at *2 (W.D. Tex. Mar. 17, 2011) (awarding $1,000 in statutory damages where the defendant "continuously" called the plaintiff's home and work phones, threatening "to have her arrested, bring charges against her, and to add attorneys' fees to the debt").

The Court finds that plaintiff's allegations support an award of statutory damages. Defendant's actions – sending a letter that improperly threatened legal action – support

---

would have no impact on plaintiff's damages award. Accordingly, the Court makes no findings regarding these theories.

a finding that the violation was intentional, but falls short of justifying the maximum statutory penalty. "[M]aximum statutory damages under 15 U.S.C. § 1692k(a)(2)(A) should be reserved for egregious violations of the FDCPA, for example, cases where the defendant repeatedly uses abusive language, improperly threatens legal action or the use of self-help, or aggressively intrudes on a consumer's home, place of employment, or [peace] of mind." *Lassiter v. Integrity Solution Servs., Inc.*, No. 13-cv-00268-PAB-MJW, 2014 WL 1977216 at *2 (D. Colo. May 15, 2014) (citing *Sterling v. Am. Credit & Collections, LLC*, No. 11-cv-03113-DME-BNB, 2012 WL 3553757, at *4 (D. Colo. Aug. 16, 2012). Although plaintiff alleges that defendant made an improper threat of legal action and threatened to report the debt to consumer reporting agencies, he alleges only one isolated incident of defendant's misconduct. Accordingly, the Court finds that an award of $600.00 in statutory damages is appropriate.

### C. Actual Damages

Plaintiff seeks an award of $3,000.00 in actual damages. Docket No. 14 at 4. In his complaint, plaintiff claims to have suffered "personal humiliation, embarrassment, mental anguish, and emotional distress." Docket No. 2 at 8, ¶ 56. However, plaintiff has not alleged any facts, in either the complaint or the affidavit attached to the motion for default judgment, that support a finding that plaintiff suffered actual damages as a result of defendant's violation of the FDCPA. *See* Docket No. 2, Docket No. 14-1; *see also Burns v. Anderson, Crenshaw & Assocs., LLC*, No. 07-cv-01192-WYD-BNB, 2008 WL 8834614, at *6 (D. Colo. Aug. 15, 2008) ("Where the plaintiff's own testimony is his only evidence of emotional damages, he must explain the circumstances of his injury in reasonable detail and not rely on conclusory statements, unless the facts underlying the

8

case are so inherently degrading that it would be reasonable to infer that a person would suffer emotional distress from the defendant's action.") (internal quotations omitted).

### III. ATTORNEYS' FEES

Section 1692k(a) of the FDCPA provides that a successful plaintiff may seek from defendant a "reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). To determine a reasonable fee request a court must begin by calculating the "lodestar amount." *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998). The lodestar amount is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). A party seeking an award of attorneys' fees must establish the reasonableness of each dollar and each hour for which the party seeks an award. *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995).

#### A. Hourly Rate

A "reasonable rate" is defined as the prevailing market rate in the relevant community for an attorney of similar experience. *Guides, Ltd. v. Yarmouth Group Prop. Mgmt., Inc.*, 295 F.3d 1065, 1078 (10th Cir. 2002); *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996). The party requesting fees bears "the burden of showing that the requested rates are in line with those prevailing in the community." *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir. 1998). In order to satisfy his burden, plaintiff must produce "satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services

by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

Here, plaintiff seeks an hourly rate of $500 for attorney Larry P. Smith, Docket No. 14-4 at 2, ¶ 8, and $450 for attorney David M. Marco, *id*. at 4, ¶ 8. Mr. Smith and Mr. Marco are both partners at their law firm and have been practicing law since 1993 and 2000, respectively. *Id*. at 2, ¶ 6, and at 4, ¶ 6. Plaintiff also seeks an hourly rate of $145 for paralegal Nicole Dycha. *Id*. at 6, ¶ 10. Plaintiff argues that the requested fees are reasonable, relying on the "Laffey Matrix." Docket No. 14 at 5-6; Docket No. 14-3. The Laffey Matrix is a chart prepared by the Civil Division of the United States Attorney's Office for the District of Columbia and is used "to evaluate requests for attorney's fees in civil cases in District of Columbia courts." Docket No. 14-3 at 2, ¶ 1. According to the Laffey Matrix, a reasonable hourly rate would be $572 for Mr. Smith, $544 for Mr. Marco, and $166 for Ms. Dycha. *Id*. at 2.

The majority of recent cases in this district have found that a reasonable attorney's fee in FDCPA cases for attorneys with Mr. Smith's and Mr. Marco's experience is $250 per hour. *See Villanueva v. Account Discovery Sys., LLC*, 77 F. Supp. 3d 1058, 1081 (D. Colo. 2015) (collecting cases). The Laffey Matrix offered by plaintiff does not justify a greater fee. "Hourly rates must reflect the prevailing market rates in the relevant community," which is the Denver metropolitan area. *See Jane L.*, 61 F.3d at 1510. The Laffey Matrix states that it is to be used "to evaluate requests for attorney's fees in civil cases in District of Columbia courts," and has not been adopted "generally for use outside the District of Columbia." *See* Docket No. 14-3 at 2, ¶ 1; *see also Villanueva*, 77 F. Supp. 3d at 1081 (noting that the Laffey Matrix "is not germane to

calculating rates in the Denver metropolitan region"). Plaintiff has made no showing that the subject of the litigation is "unusual" or requiring "special skills" that would require the Court to apply the reasonable hourly rate for an out-of-state community. *See Jane L.*, 61 F.3d at 1510. Accordingly, the Court finds that $250 per hour is the reasonable rate for Mr. Smith's and Mr. Marco's time. The Court likewise finds that the requested $145 per hour for Ms. Dycha is inconsistent with prevailing rates recently found in this district. *See Hughs v. Oxford Law, LLC*, No. 15-cv-00574-PAB, 2018 WL 4257319, at *5 (D. Colo. Sept. 6, 2018) (finding $110 per hour to be a reasonable rate for a paralegal with a degree in paralegal studies); *Home Loan Inv. Co. v. St. Paul Mercury Ins. Co.*, 78 F. Supp. 3d 1307, 1319 (D. Colo. 2014) (reaffirming that "the average, reasonable hourly rate" for paralegals in Colorado is $100-$110); *Peterson-Hooks v. First Integral Recovery, LLC*, No. 12-cv-01019-PAB-BNB, 2013 WL 2295449, at *8 (D. Colo. May 24, 2013) (finding $110 per hour to be a reasonable rate for a paralegal with significant experience). Thus, the Court determines that a reasonable paralegal rate in this case is $110 per hour.

### B. Number of Hours

In determining the reasonableness of the hours expended, a court considers several factors. First, it considers whether the fees pertain to tasks that would ordinarily be billed to a client. *See Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983), *overruled on other grounds by Penn v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 717 n.4 (1987). Plaintiff must demonstrate that his counsel used "billing judgment" in winnowing down the hours actually spent to those reasonably expended. *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1257 (10th Cir. 2005). If not, a court

11

should take extra care to ensure that an attorney has not included unjustified charges in his billing statement. *Id.* A court should also consider whether the amount of time spent on a particular task appears reasonable in light of the complexity of the case, the strategies pursued, and the responses necessitated by an opponent's maneuvering. *Id.* "In determining what is a reasonable time in which to perform a given task," an attorney submitting billing entries should consider the following factors: (1) the complexity of the case; (2) the number of reasonable strategies pursued; (3) the responses necessitated by the maneuvering of the other side; and (4) "the potential duplication of services" caused by the presence of multiple attorneys when one would suffice. *Ramos*, 713 F.2d at 554. Ultimately, the Court's goal is to fix a fee that would be equivalent to what the attorney would reasonably bill for those same services in an open market and fees will be denied for excessive, redundant, and otherwise unnecessary expenses. *Ramos*, 713 F.2d at 553. The burden is on the party requesting fees to prove that its counsel exercised proper billing judgment. *Case v. Unified Sch. Dist. No. 233, Johnson Cty., Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1998) ("Counsel for the party claiming the fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks").

In *Missouri v. Jenkins by Agyei*, 491 U.S. 274 (1989), the Supreme Court found non-compensable "purely clerical or secretarial tasks [which] should not be billed at a paralegal rate, regardless of who performs them." *Id.* at 288 n.10. A review of plaintiff's time entries reveals that Mr. Marco billed time on two separate occasions for filing

12

documents with the Court, which is a non-compensable task. *See* Docket No. 14-2 at 2 (time entries for Aug. 1 and Oct. 26, 2018). Accordingly, the Court will reduce Mr. Marco's 3.7 hours billed by 0.2 hours. Accounting for this reduction, the reasonable number of hours spent by plaintiff's attorneys on this case is 5.7 hours: 2.2 hours by Mr. Smith and 3.5 hours by Mr. Marco. The reasonable number of hours spent by plaintiff's paralegal on this case is 4.5 hours.

### C. Lodestar Amount

Based on the aforementioned conclusions, the Court finds that the lodestar figure for plaintiff's attorneys' fee request is $1,920.00, which equals 5.7 hours multiplied by $250 per hour and 4.5 hours multiplied by $110 per hour. This fee award is reasonable given the issues presented in this case and it is also adequate to attract competent counsel to similar cases without producing a windfall for attorneys. *Blum*, 465 U.S. at 893-84.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiff's Motion for Default Judgment [Docket No. 14] is **GRANTED**. It is further

**ORDERED** that default judgment shall enter against defendant The Sullivan Kline Group, LLC. It is further

**ORDERED** that $600.00 in damages pursuant to 15 U.S.C. § 1692k(a)(2)(A) are awarded against defendant The Sullivan Kline Group, LLC and in favor of plaintiff Joseph Pirera. It is further

**ORDERED** that plaintiff Joseph Pirera shall be awarded $1,920.00 in attorneys' fees. It is further

**ORDERED** that, pursuant to 15 U.S.C. § 1692k(a)(3), within 14 days of the entry of judgment, plaintiff may have his costs by filing a bill of costs with the Clerk of the Court. It is further

**ORDERED** that this case is closed.

DATED September 5, 2019.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge